**BD&J, PC**
OLIVIER A. TAILLIEU (SBN 206546)
  *ot@bhattorneys.com*
JENNIFER BAGOSY (SBN 223145)
  *jb@bhattorneys.com*
9701 Wilshire Blvd., 12th Floor
Beverly Hills, CA 90212
Telephone: (310) 887-1818
Facsimile: (424) 421-1891

Attorneys for Plaintiffs,
SUSAN ANN SMITH, as successor in interest to DECEDENT
SEAN CONROY WHITING; SUSAN ANN SMITH individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN ANN SMITH, as successor in interest to DECEDENT SEAN CONROY WHITING; SUSAN ANN SMITH, individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ORANGE, a public entity; ORANGE COUNTY SHERIFF'S DEPARTMENT; SHERIFF DON BARNES, in his individual and official capacities; CAPTAIN NATE WILSON, in his individual and official capacities; OFFICER TAMASCO, in his individual and official capacities; DAVID NEAL WHITING, an individual; and DOES 1 through 50, individually, jointly and severally, <br><br> Defendants. | **CASE NO.** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Loss of Parent-Child Relationship, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 2. Deprivation of Life Without Due Process of Law, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 3. Failure to Adequately Train Officers (42 U.S.C. § 1983), via Cal. Code Civ. Proc. § 377.30 and Direct Liability Claim; <br> 4. Violation of Civil Rights – Monell Liability (42 U.S.C. § 1983); <br> 5. Negligence; <br> 6. Violation of California Government Code §845.6; <br> 7. Violation of Americans with Disability Act (ADA), Title II, 42 U.S.C. §12101, *et seq.*, The Rehabilitation Act, 29 U.S.C. §794, and California Unruh Act, Cal. Civ. Code § 51, *et seq.* <br> 8. Wrongful Death (Cal. Code Civ. Proc. § 377.60) <br><br> **DEMAND FOR JURY TRIAL** |

1

## COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs SUSAN ANN SMITH, as successor in interest to DECEDENT SEAN CONROY WHITING; SUSAN ANN SMITH, individually, and allege as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

3.      Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

4.      With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

5.      Decedent Sean Conroy Whiting was 35 years old when he passed away on December 23, 2022.  He was and the natural born son of Susan Ann Smith and David Neal Whiting. At the time of his death, upon information and belief, Decedent was in the general population of the jail at the Orange County's Intake Release Center ("IRC"), and he resided in the County of Orange, California. These claims are brought by Susan Ann Smith as the successor in interest to Sean Conroy Whiting, and on behalf of Susan Ann Smith individually.

6.      Plaintiff Susan Ann Smith, is and was, at all times relevant hereto, the natural mother of decedent Sean Conroy Whiting, and at all times relevant hereto was

a resident of the County of Orange, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Sean Conroy Whiting on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

7.     Defendant COUNTY OF ORANGE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant ORANGE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "OCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including OCSD employees responsible for the operation of Orange County jails, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through OCSD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the OCSD correctional facilities, including the Intake Release Center (IRC), OC Central Men's and Womens Jails, Santa Ana City Jail, Theo Lacy Facility, and the James A. Musick Facility. (hereinafter collectively "COUNTY Jails").

8.     Defendant DON BARNES ("SHERIFF BARNES"), at all times mentioned herein, is and, since January 7, 2019, has been the Sheriff-Coroner of Defendant COUNTY OF ORANGE, the highest position in the COUNTY Jails. As Sheriff, Defendant BARNES is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BARNES is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BARNES also is and was

**COMPLAINT FOR DAMAGES**

responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BARNES is being sued in his individual and official capacities.

9.     Defendant Captain NATE WILSON ("WILSON"), at all times mentioned herein, was employed by Defendant COUNTY as the Commander of the IRC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant WILSON was a policy making official for the COUNTY OF ORANGE. During the relevant time period, Defendant WILSON was responsible for the general management and control of the IRC, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff. Defendant WILSON is being sued in his individual capacity.

10.     Defendant OFFICER TAMASCO, so named upon information and belief based on the name Plaintiff recalls him giving to her, at all times mentioned herein, was a police officer employed by Defendant COUNTY and OCSD, for the COUNTY and OCSD, and he was acting within the course and scope of that employment. Defendant TAMASCO is being sued in his individual capacity.

11.     Defendants COUNTY OF ORANGE, ORANGE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BARNES, COMMANDER WILSON, and OFFICER TAMASCO, will hereinafter be referred to as the COUNTY DEFENDANTS.

12.     Nominal Defendant DAVID NEAL WHITING is the surviving natural father of Decedent Sean Conroy Whiting, and therefore is named as a nominal defendant only. Upon information and belief, Nominal Defendant DAVID NEAL WHITING will assert that he sustained pecuniary losses resulting from the death of Decedent, in an amount presently unknown.

13.     There are no other heirs or successors-in-interest of Decedent besides Plaintiff SUSAN ANN SMITH and DAVID NEAL WHITING. No probate estate has been opened in any court.

14.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 50 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

15.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 50 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 50 include individual law enforcement personnel and medical personnel employed by the OCSD and the COUNTY, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 50 were and still are residents of the County of Orange, California. DOES 1 through 50 are sued in both their individual and official capacities.

16.     At all relevant times, DOES 25 to 50 were also managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 25-50 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-24, and the OCSD employees at the COUNTY Jails. DOES 25-50 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

**COMPLAINT FOR DAMAGES**

17.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

18.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Sean Conroy Whiting's constitutional rights and other harm.

19.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

20.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

**COMPLAINT FOR DAMAGES**

21.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**I.    Decedent Sean Conroy Whiting's History of Mental Illness and His Mother Susan Smith's Attempts to Support and Assist Him**

22.    Sean Conroy Whiting, age 35, was a resident of Rancho Santa Margarita, who had attended college at Saddleback Community College and was seeking employment as an IT professional. However, he also had a history of mental illness, which included severe insomnia, in which he would not sleep for several days, resulting in hallucinations. Mr. Whiting had been diagnosed with ADD and anxiety disorder, and also suffered from depression. During his bouts of severe insomnia, Mr. Whiting was prone to seizures and vomiting. Upon information and belief, Mr. Whiting's symptoms may have been consistent with schizophrenia, although Plaintiff Smith was unaware of any such diagnosis.

23.    Sean Whiting had been living with his mother, Plaintiff Susan Ann Smith, who has been a para-educator working with severely mentally handicapped young adults in Orange County since approximately 2015. Susan Smith, who was 68 years old at the time of Mr. Whiting's death, loved her son and tried her best to help him and provide a home for him while he searched for work. During that time, she also tried repeatedly to encourage him to see a psychiatrist or other mental health professional for his mental illness, and she offered to pay for his treatment. However, Sean Whiting always refused these offers of treatment or help.

24.    At some point between 2015 and 2022, beginning in approximately 2017 or 2018, Sean Whiting moved out of Plaintiff Smith's home for over a year to live with his girlfriend in Dana Point, California. Upon information and belief, Mr. Whiting's girlfriend came home one day to find him in the closet covered in coat hangers, talking nonsensically.  Upon information and belief, Mr. Whiting's girlfriend called to have him evaluated under California Welfare and Institutions

**COMPLAINT FOR DAMAGES**

Code § 5150 ("Section 5150"). Section 5150 allows persons experiencing a mental health crisis to be evaluated and involuntarily detained for a 72-hour psychiatric hospitalization if they are deemed to be a danger to themselves or others. Upon information and belief, Mr. Whiting was held for the entire 72-hour period at a hospital in south Orange County and then released.

25.    After that incident, Sean Whiting came back to live with Plaintiff Smith. However, his illness became more severe over time, causing him to have more intense hallucinations and, when he was in that state, to become verbally and physically abusive to his mother. He would curse at her and tell her to kill herself, and he had also pushed her down several times and punched her. Plaintiff Smith continued to support him, financially and emotionally, encouraging him to get treatment for his mental illness (which he would not) and to pursue his career goals in computer and information technology.

**II.    Sean Whiting's Hallucinations and Section 5150 Detention on December 3, 2022 and Subsequent Release**

26.    On or about December 3, 2022, Sean Whiting had not slept for 8 days, and when Plaintiff Smith came home late in the evening, he insisted that there were 85 people outside including a film crew, disguised as bushes.  Plaintiff Smith knew not to confront or challenge him, but instead stayed with him in the kitchen for 30 minutes to try to comfort him.

27.    After that, Mr. Whiting seemed somewhat calmer, and so Plaintiff Smith tried to encourage him to go to bed. Instead, Mr. Whiting ran out of the house. Later that evening, he came back to Plaintiff's home with bloody feet. He stood at the top of the stairs and said "Mom, I'm playing dead." Plaintiff again tried to convince him to go to bed.  He ran out again and came back some time later bleeding from his head.

28.    At this point, Plaintiff was terrified and called 911. She was desperate and believed that was the only way to get help for her son. Emergency responders arrived and took him to Mission Viejo Hospital. Upon information and belief, Mr.

1   Whiting was at the hospital for 1-2 days, after which he was taken to a facility on

2   Bristol Street east of South Coast Plaza for evaluation under Section 5150.

3       29.    After approximately 2 days or 48 hours of the start of his evaluation at

4   Little Mission, Plaintiff Smith received a call asking her to bring clothes for Mr.

5   Whiting. She did, and the facility insisted on releasing Mr. Whiting, over Plaintiff's

6   protests. A social worker who identified himself as Kevin said that Mr. Whiting did

7   not need further hospitalization and asked if Mr. Whiting could live with Plaintiff.

8   Plaintiff said no, she did not have the ability to care for him anymore, but that she

9   would give him money to pay for housing.

10       30.    On many occasions during the previous year, Plaintiff Smith had offered

11   to pay Mr. Whiting's rent if he would move out, but he always declined.

12       31.    Plaintiff Smith gave Mr. Whiting $2000 to use toward housing and food.

13   ***Mr. Whiting then told Plaintiff that if he ever had to live on the street, he would kill***

14   ***himself***. She assured him that would never happen, and she offered to pay for at least

15   the next 6 months of his rent once he found a place to live.

16       32.    After that, Mr. Whiting went to the house of a close friend and her

17   mother. He stayed there for a few days. When he learned that his friend had long

18   COVID with memory loss, and his friend's mother had Stage 3 liver cancer, he later

19   told Plaintiff Smith, he gave the mother the $2000 that Plaintiff had given him.

20       33.    Mr. Whiting then tried to convince Plaintiff Smith to let him come back

21   to live with her again. She said no, and he asked if he could come to the house to pick

22   up his belongings. Plaintiff Smith said yes, but only if he brought along a person

23   Plaintiff knows.

24   **III.    Susan Smith Is Forced to Obtain a Temporary Restraining Order Due**

25           **to Sean Whiting's Condition and Likelihood of Injury to Himself and to**

26           **Her**

27       34.    When Mr. Whiting came back to Plaintiff Smith's house on or about

28   December 10, 2022, Plaintiff's brother was visiting from out of town. Mr. Whiting

**COMPLAINT FOR DAMAGES**

brought his friend's mother with him. He asked if he could come back to live with Plaintiff Smith, and she again said no. Mr. Whiting went upstairs to retrieve his belongings and then went outside to his friend's mother's truck.

35.     Twenty or thirty minutes later, Mr. Whiting came back in. His friend's mother had left, and Plaintiff Smith and her brother were now alone with Mr. Whiting.  He insisted that he knew his rights and had a legal right to live with Plaintiff. Plaintiff Smith called the OCSD, who said that he was correct since he had been living there for several years. The OCSD told Plaintiff that she would need to file a restraining order to get him to leave.

36.     Plaintiff Smith and her brother, afraid for their safety, fled to a hotel while Mr. Whiting stayed in Plaintiff's home.

37.     On December 13, 2022, Plaintiff Smith applied for and obtained a Temporary Restraining Order that prevented Mr. Whiting from contacting Ms. Smith, or abusing or harassing her, and required that he stay 100 yards away from her and her home. In granting the Temporary Restraining Order, the judge also noted that at the time of the hearing, scheduled for January 4, 2023, Mr. Whiting should be considered for counseling services.

38.     The Court granted the Temporary Restraining Order, and an OCSD Officer who, to the best of Plaintiff's recollection, identified himself by the last name TAMASCO (Defendant Officer TAMASCO) was assigned to serve the TRO on Mr. Whiting.  Between December 13 and 21, 2022, Defendant TAMASCO was in regular contact with Plaintiff Smith regarding service efforts.  During those conversations, Plaintiff Smith told Defendant TAMASCO about Mr. Whiting's mental illness: his anxiety, hallucinations, his insomnia, and seizures. Plaintiff Smith also told TAMASCO, and told everyone she later spoke with from OCSD and COUNTY, that Mr. Whiting had threatened to commit suicide if he ever had to live on the street for a week.

**COMPLAINT FOR DAMAGES**

39.    Defendant TAMASCO had a difficult time serving Mr. Whiting, who refused to answer the door and then ran up to his room and locked the door when officers obtained entry to the home.

**IV.    Sean Whiting's Arrest By OCSD Officer TAMASCO After Service of the TRO**

40.    On December 21, 2023, Defendant TAMASCO called Plaintiff Smith and told her he had served the TRO papers on Mr. Whiting, so she could come back to the house. Plaintiff Smith came back to her home to find Defendant TAMASCO still there.  Defendant TAMASCO told Plaintiff Smith that when he hand-served Sean Whiting the TRO papers, Mr. Whiting did not look at them, but instead set them on the counter and walked out of the house and down the street.

41.    As Plaintiff Smith and Defendant TAMASCO were standing outside Plaintiff's home talking, Sean Whiting came back, walking down the sidewalk toward Plaintiff's home.  Sean Whiting saw his mother and smiled. He did not appear to have any idea anything was amiss.

42.    When Sean Whiting approached his mother and Defendant TAMASCO, he was in immediate violation of the TRO and its 100-foot rule.  Because Defendant TAMASCO observed the violation, he said he had no choice but to arrest Mr. Whiting on the spot. Mr. Whiting was terrified as Defendant TAMASCO took him away, and Plaintiff begged for Mr. Whiting to be given help and treatment, saying over and over again that he had insomnia, he had seizures, he was mentally ill, in danger of taking his own life, and needed treatment.

**V.    Sean Whiting's Incarceration and Court Hearing**

43.    The next day, December 22, 2023, a woman called Plaintiff Smith on behalf of COUNTY Investigator Carlos Gonzalez and informed her that Sean Whiting had a court date the following morning. Plaintiff Smith told this woman that Mr. Whiting had mental illness, insomnia, seizures, and needed psychiatric help. The

1  D.A.'s representative assured Plaintiff Smith that he was in a single cell and under
2  24/7 observation.

3       44.     Upon information and belief, Mr. Whiting was incarcerated in a mental
4  health ward of an OCSD and COUNTY jail facility on December 21.

5       45.     On December 23, 2023, upon information and belief, Mr. Whiting had a
6  court hearing via Zoom at 1:30 p.m. before a judge, in which he was represented by a
7  public defender. During that hearing, Mr. Whiting was ordered to be released from
8  OCSD and COUNTY custody.

9  **VI.    Defendants Place Sean Whiting Into the General Population of IRC
10          and He Commits Suicide**

11       46.     Upon information and belief, after the Zoom hearing, employees and
12  agents of OCSD and COUNTY placed Mr. Whiting in the general population of
13  inmates at the Intake Release Center, (IRC), located at 550 N. Flower Street, Santa
14  Ana, CA 92703.

15       47.     Upon information and belief, at or about 3:00 p.m., Mr. Whiting, along
16  with the other IRC general population inmates, were given a snack. That snack
17  included an orange.

18       48.     Upon information and belief, sometime between 3:00 p.m. and 3:20 p.m.
19  on December 23, 2022, Mr. Whiting intentionally choked on his snack, including the
20  orange peel, to attempt suicide.

21       49.     On December 24, 2022, the OCSD and Defendant BARNES put out a
22  News Release published on the OCSD's website ("Whiting News Release").  It stated
23  that, "earlier in the day on Dec. 23, Whiting was transported to OC Global Santa Ana
24  for a medical issue. He died at the hospital around 4:30 p.m. A final cause of death
25  will be determined following toxicology testing and an independent autopsy." A copy
26  of this News Release is attached hereto as **Exhibit 1**.

27       50.     However, the records from Orange County Global Medical Center,
28  where Mr. Whiting was pronounced deceased, revealed that:

a. Mr. Whiting had been found choking and with no pulse at about 3:20 p.m.

b. Paramedics arrived, CPR was attempted, epinephrine was administered, and Mr. Whiting was transported to the emergency department and arrived there at approximately 4:00 p.m.

c. The ER doctor opened Mr. Whiting's airway, which was completely obstructed with food boluses, including. The doctor spent 12 minutes suctioning and pulling out food boluses but was unable to clear Mr. Whiting's airway.

d. Mr. Whiting was pronounced deceased at 4:12 p.m. By that time he had been without a pulse for approximately 53 minutes.

e. The ER doctor's diagnosis was "Cardiac arrest secondary to choking/obstruction airway." The report was signed by Imran Imam, M.D. at 4:45 p.m. on December 23, 2022.

51. Consequently, the information that Defendant BARNES and the COUNTY DEFENDANTS publicized in the December 24, 2022 Whiting News Release was false and misleading, and designed to hide that Mr. Whiting committed suicide by choking. Defendant BARNES and the COUNTY DEFENDANTS knew Mr. Whiting was not admitted to the hospital "earlier in the day on Dec. 23," he was admitted 12 minutes before he was pronounced dead. The "medical issue" for which he was transferred was not an illness or naturally occurring problem, as such a vague statement tends to suggest, but for intentionally ingesting and choking himself on massive quantities of food. The statement that the "final cause of death will be determined" was also intentionally misleading, or alternatively outright false, because Dr. Imam's December 23, 2022 report signed 4:45 p.m. determined the cause of death to be cardiac arrest secondary to choking/obstruction airway.  The careful, vague, and passive phrasing of Mr. Whiting's in-custody-death report, which, as

described below, mirrors so many others provided by COUNTY DEFENDANTS for OCSD inmate deaths, was intentionally false and/or misleading.

52.     BARNES and the COUNTY DEFENDANTS carefully crafted the Whiting News Release was to hide that the DEFENDANTS placed Mr. Whiting, a known mentally ill person who had previously been under 24/7 observation due to the risk that he may harm himself or others, into the general population of the IRC, where he was given snacks including an orange, despite orange peels posing an obvious suicide risk.

53.     These facts demonstrate that the COUNTY DEFENDANTS utterly failed to supervise and provide for the basic health needs of their inmates, particularly their mentally ill inmates, such as Mr. Whiting, who had even purportedly been designated by uniform color as someone who suffered from mental illness and required extra supervision.

54.     Mr. Whiting was ordered to be released. He was innocent until proven guilty of any offense. In fact, Ms. Smith's very goal in involving the OCPD and COUNTY in the first place was to place Mr. Whiting in a position where he could not harm anyone and could hopefully obtain the psychiatric care he needed. Even her TRO papers requested that he receive counseling.

55.     Yet because Mr. Whiting received an order of release at a time when he could not live with Plaintiff Smith, after that 1:30 p.m. hearing, he had no place to go. Therefore, as soon as OCPD and COUNTY provided him with the means to do so, Mr. Whiting committed suicide. OCPD's and COUNTY's decision to place a suicidal inmate with severe mental illness in the general population and give him a snack with an orange was outrageous and utterly negligent, in willful disregard of his rights under the Constitution, the Americans with Disabilities Act, the Unruh Act, and all other laws identified in this Complaint.

56.     Plaintiffs timely and properly filed tort claims with the- County of Orange pursuant to California Government Code sections 910, *et seq*., and this action

1    is timely filed within all applicable statutes of limitation.

2    57.    This complaint may be pled in the alternative pursuant to Federal Rule of

3    Civil Procedure 8(d).

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

58.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

## I.    The COUNTY Jails Experienced 12 Inmate Deaths in 2022.

59.    In 2022, DEFENDANT OCSD and COUNTY'S Jails resulted in twelve (12) in-custody deaths, including the death of Sean Conroy Whiting, which was the twelfth death that year:

       a.    Unnamed Inmate, 65 years old, Central Mens' Jail, Santa Ana (Date of Loss: March 8, 2022; Reported Manner of Death: COVID-19)

**COMPLAINT FOR DAMAGES**

b. Ronald Garcia Lucio, age 38, <u>Intake Release Center</u>, (Date of Loss: March 18, 2022: Reported Manner of Death: "found unresponsive in his cell... housed alone at the time…")

c. Larry Esquivel, age 61, Theo Lacy Facility (Date of Loss: April 16, 2022; Reported Manner of Death: "pronounced deceased at the hospital after being transferred to the hospital for a medical procedure.")

d. Unnamed Inmate, age not given, Theo Lacy Facility (Date of Loss: April 17, 2022; Reported Manner of Death: "pronounced deceased at the hospital after being transferred to the hospital for a medical issue….")

e. Nicholas Brown, age 28, <u>Intake Release Center</u> (Date of Loss: April 120, 2022; Reported Manner of Death: "found unresponsive in his cell… housed alone at the time.")

f. Jade Castellanos, age 44, <u>Intake Release Center</u> (Date of Loss: May 11, 2022; Reported Manner of Death: "found unresponsive in her cell… housed alone at the time…")

g. Eric Garcia, age 40, Theo Lacy Facility (Date of Loss: July 3, 2022; Reported Manner of Death: "pronounced deceased at the hospital after being transferred to the hospital for a medical issue")

h. Unnamed Inmate, age 57, Theo Lacy Facility (Date of Loss: September 2, 2022; Reported Manner of Death: "found unresponsive in his cell… taken to the hospital where he was pronounced deceased…")

i. Margarita Luna, age 44, <u>Intake Release Center</u> (Date of Loss: September 29, 2022; Reported Manner of Death: "pronounced deceased at the hospital after being transferred to the hospital for a medical issue…")

j. Unnamed Inmate, age 59, Central Men's Jail (Date of Loss: November 4, 2022; Reported Manner of Death: "pronounced deceased at the hospital after being transferred there this morning for a medical issue…")

16

**COMPLAINT FOR DAMAGES**

k. Roderick Dunning, age 58, <u>Intake Release Center</u> (Date of Loss: November 6, 2022; Reported Manner of Death: "complications related to a medical condition")

l. Sean Conroy Whiting, age 35, <u>Intake Release Center</u> (Date of Loss: December 23, 2022; Reported Manner of Death: "died at the hospital… was transported to OC Global Santa Ana for a medical issue…")

60.     In each case except the COVID death and Mr. Dunning, the actual cause of death was not named, instead, the official report stated that the cause of death would be determined following toxicology testing and an autopsy.

61.     Also in each case except the COVID death and Mr. Dunning, the reports were carefully crafted – just as the Whiting News Release was – to hide any possible hint as to how the inmate actually died. Five others referred to hospitalization for a "medical issue," like Whiting News Release. Four simply stated that they were "found unresponsive" in their cells. Given the similarity of these other 9 reports to the Whiting News Release, it is entirely reasonable to infer or conclude that these phrases are a euphemism for suicide. However, by delaying the official investigations and autopsies for months, the COUNTY DEFENDANTS are able to publicly classify these deaths as mysterious accidents in an effort to absolve themselves from liability arising from leaving mentally ill detainees unsupervised and with the means to commit suicide.

62.     Therefore, upon information and belief, Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides.

**II.    The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues.**

63.     Defendants OCSD and COUNTY DEFENDANTS BARNES and WILSON, through their supervision of the COUNTY's Correctional Health Services

(hereinafter also "CHS") medical staff, were responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

    a.  Staffing for the jail's medical and mental health units;

    b.  Administrative structure, medical direction and operational oversight for the medical and mental health units;

    c.  Oversight of the day-to-day operations of the health services programs at the jail;

    d.  Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

    e.  Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

    f.  Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

    g.  Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

    h.  Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

64.    By the time that decedent Sean Whiting was placed in the general population at the IRC, Defendants COUNTY, OCSD, BARNES, WILSON, TAMASCO, and the COUNTY custody, medical and mental health staff, and each of them, understood that the location where decedent Sean Whiting was housed after his

hearing on December 23, 2022 was not suitable for an inmate who exhibited clear signs of severe mental illness, hallucinations, and suicidal ideations because the IRC's general population was given materials, including food items, that were unreasonably dangerous for housing inmates with identified mental health concerns

65.    Defendants COUNTY, OCSD, BARNES, WILSON, TAMASCO and the COUNTY custody, medical and mental health staff, and each of them, knew that placing decedent Sean Whiting in the general population of the IRC would pose a substantial risk of death. Upon information and belief, prior to the death of decedent Sean Whiting, other persons in the custody of the COUNTY and supervised and cared for by the COUNTY medical and custody staff had attempted suicide by similar means during their incarcerations at the COUNTY Jails.

66.    Based on the aforementioned, Defendants COUNTY, OCSD, BARNES, WILSON, TAMASCO, and the COUNTY custody, custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent Sean Whiting's safety, yet disregarded these dangers resulting in his death.

## FIRST CAUSE OF ACTION

### VIOLATION OF FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS – LOSS OF PARENT-CHILD RELATIONSHIP [42 U.S.C. § 1983]

### (Against all Defendants, Except COUNTY)

67.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

68.    Plaintiff is informed and believes, and based on such information and belief, allege that Defendants acted with deliberate indifference for SEAN CONROY WHITING's reasonable security, in that they ignored and/or failed to reasonably monitor, to provide security, and to prevent SEAN CONROY WHITING from committing harm to himself; failed to seek immediately indicated access to mental and medical care for him; and ignored his serious but treatable mental condition. Due

to Defendants' deliberate indifference to the serious nature and life threatening condition of SEAN CONROY WHITING, and their failure to timely intervene to provide reasonable security, monitoring and safety necessary in order to prevent his efforts to harm himself, SEAN CONROY WHITING suffered preventable serious injuries and harm by committing suicide.

69.    SEAN CONROY WHITING was subjected to deprivation of rights by these Defendants, including DOES 1 through 50, inclusive, acting under the color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges, and immunities secured to SEAN CONROY WHITING by the Fourteenth and Eighth Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

70.    Defendants' unlawful custom, policies, practices, and actions described above, which caused the death of SEAN CONROY WHITING, was done intentionally and was done in a manner that constituted a deliberate indifference to and reckless disregard of SEAN CONROY WHITING's life and to said Child – Parent Relationship, and constituted outrageous behavior that is shocking to the conscience.

71.    The death of SEAN CONROY WHITING also caused Plaintiff SUSAN ANN SMITH to suffer the loss of SEAN CONROY WHITING's society, solace and comfort, companionship, as well as caused her to suffer great mental, emotional and distress, pain and suffering in an amount to be shown at trial.

72.    The death of SEAN CONROY WHITING, caused by Defendants, above-referenced, was done maliciously and in reckless disregard of Plaintiff's

**COMPLAINT FOR DAMAGES**

1  constitutional rights, sufficient for an award of punitive damages against said

2  Defendants (save COUNTY); all in an amount to be shown at trial.

3  <u>**SECOND CAUSE OF ACTION**</u>

4  **DEPRIVATION OF LIFE WITHOUT DUE PROCESS OF LAW**

5  **UNDER FOURTEENTH AMENDMENT[1] [42 U.S.C. § 1983]**

6  **(FEDERAL SURVIVALSHIP CLAIM VIA CAL. CIV. PROC. CODE § 377.30)**

7  **(Against all Defendants, Except COUNTY)**

8  73.    Plaintiffs reallege and incorporate herein by reference each of the

9  preceding paragraphs of this complaint, and any subsequent paragraphs.

10  74.    Plaintiff is informed and believes, and based on such information and

11  belief, allege that Defendants acted with deliberate indifference for SEAN CONROY

12  WHITING's reasonable security, in that they ignored and/or failed to reasonably

13  monitor, to provide security, and to prevent SEAN CONROY WHITING from

14  committing harm to himself; failed to seek immediately indicated access to mental

15  and medical care for him; and ignored his serious but treatable mental health

16  condition. Due to Defendants' deliberate indifference to the serious nature and life

17  threatening condition of SEAN CONROY WHITING, and their failure to timely

18  intervene to provide reasonable security, monitoring and safety necessary in order to

19  prevent his efforts to harm himself, SEAN CONROY WHITING suffered

20  preventable serious injuries and harm by committing suicide.

21  75.    SEAN CONROY WHITING was subjected to deprivation of rights by

22  these Defendants and DOES 1 through 50, inclusive, acting under the color of state

23  law and of statutes, ordinances, regulations, customs and usages of the Law of United

24  States, State of California, which rights included, but are not limited to, privileges

25  and immunities secured to SEAN CONROY WHITING by the Fourteenth and Eighth

26  Amendments to the United States Constitution and laws of the United States, and

27  particularly: a) his right to access to mental health and medical care and treatment for

28  his serious but treatable condition; b) his right to adequate, reasonable security,

1  monitoring, supervision, classification and housing for his mental health and medical

2  disabilities, each of which was also a cause of his serious injury and harm.

3      76.    Said denial of SEAN CONROY WHITING's right not to be deprived of

4  his life without due process of the laws caused SEAN CONROY WHITING to suffer

5  severe physical and mental and emotional pain, suffering and injury, as well as lost

6  wages / profits, the loss of his enjoyment of life, medical bills and expenses, and

7  expenses, and other special and general damages; all in an amount to be proven and

8  trial.

9      77.    Moreover, as actions and omissions of said Defendants were done with

10  deliberate indifference to his physical safety and to his very life, and were done

11  intentionally, maliciously recklessly, sadistically, oppressively, outrageously, and

12  with deliberate indifference and a reckless disregard of SEAN CONROY

13  WHITING's constitutional rights, SUSAN ANN SMITH is entitled to an award of

14  punitive damages against said Defendants (save COUNTY), in an amount to be

15  shown at trial in an amount to be shown at trial.

16  **THIRD CAUSE OF ACTION**

17  **FAILURE TO ADEQUATELY TRAIN OFFICERS [42 U.S.C. § 1983]**

18  **(FEDERAL SURVIVALSHIP CLAIM VIA CAL. CIV. PROC. CODE § 377.30,**

19  **and DIRECT LIABILITY CLAIM)**

20  **(Against all Defendants)**

21      78.    Plaintiff reallege and incorporate herein by reference each of the

22  preceding paragraphs of this complaint, and any subsequent paragraphs.

23      79.    Plaintiff is informed and believes and thereon alleges that Defendants

24  BARNES, WILSON, TAMASCO, and DOES 1 through 50, inclusive, knew,

25  or in the exercise of reasonable care, should have known of a history and propensity

26  and pattern at the time of this incident for employees of the COUNTY Jails, including

27  the IRC, to fail to provide reasonable security, monitoring and supervision of inmates

28  such as SEAN CONROY WHITING; to fail to comply in implementing policies and

procedures or ensuring the enforcement thereof; to fail to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as SEAN CONROY WHITING; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as SEAN CONROY WHITING, were having a mental health crisis requiring prompt intervention. Defendants' disregard of this knowledge or failure to adequately investigate and discovery and correct such acts or failures to act was a moving force which caused the violation of Plaintiff's constitutional rights.

80.    Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, Defendants BARNES, WILSON, TAMASCO, and DOES 1 through 50, inclusive, acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such committed similar acts of:

a.    Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Orange County known mental disabilities;

b.    Failure to provide adequate housing and properly classify inmates in the Orange County Jails so that they would have access to and delivery of indicated mental health and medical care;

c.    Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

d.    Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

e.    Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes

1   punishment for behavior resulting from or caused by their mental health

2   disability.

3       81.     Plaintiff is further informed and believes and thereon alleges that

4   Defendants BARNES, WILSON, TAMASCO and DOES 1 through 50, inclusive,

5   knew, or in the exercise of reasonable care should have known, of this pattern or

6   practice of unconstitutional violations, or the existence of facts which create the

7   potential of unconstitutional acts, and these Defendants and DOES 1 through 50,

8   inclusive, had a duty to train and instruct their subordinates to prevent similar acts to

9   other inmates, but failed to take steps to properly train, supervise, investigate or

10  instruct deputies, counselors, physicians and nurses, and/or agents or employees, and

11  to retain deputies, counselors, physicians and nurses who had a history of

12  inappropriate conduct, and as a result SEAN CONROY WHITING was harmed in a

13  manner threatened by the pattern or practice.

14      82.     At all times herein mentioned, and prior thereto, Defendants had the duty

15  to perform the following, and violated that duty:

16      a.      To train, supervise, and instruct deputies, counselors, nurses, physician

17              assistants, physicians, and other agents to ensure that they respected and did

18              not violate federal and state constitutional and statutory rights of inmates;

19      b.      To objectively investigate incidents of in-custody injury, deaths, suicides

20              and suicide attempts, inadequate classification and contraindicated housing,

21              and to take remedial action;

22      c.      To provide access to and delivery of mental and medical health care,

23              intervention, treatment, follow-up, and attention to injured, ill or potentially

24              suicidal inmates, the lack of which resulted in serious injury or loss of life, and

25              to provide access and delivery of competent mental and medical health care;

26      d.      To periodically monitor an inmate's serious mental health and medical

27              condition and suicide prevention, the lack of which may result in serious injury

28              or loss of life;

**COMPLAINT FOR DAMAGES**

e.    To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

f.    To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Orange County Jails.

g.    To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to person with known dangerous propensities;

h.    To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i.    To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of SEAN CONROY WHITING's and other inmates' constitutional rights;

j.    To periodically train custodial staff and counselors on understanding, recognizing, reporting and responding to issues of inmates' mental health care and treatment; and

k.    Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

83.    As a legal result of the conduct of Defendants BARNES, WILSON, TAMASCO, and DOES 1 through 50, inclusive, as described above, Plaintiff was damaged as alleged herein and as set forth above.

84.    As a direct and proximate result of Defendants' actions, above-referenced, SEAN CONROY WHITING was deprived of his life, suffered great pre-

25

**COMPLAINT FOR DAMAGES**

death physical, mental and emotional pain and suffering, and Plaintiff was substantially physically, mentally and emotionally injured, and incurred medical and psychological costs/bills and expenses, funeral and burial expenses, incurred the loss of society, comfort, solace and her parent – child relationship with SEAN CONROY WHITING, and other special and general damages and expenses; all in an amount to be proven at trial.

85.     The actions by said Defendants were done maliciously and in reckless disregard of Plaintiff's constitutional rights, sufficient for an award of punitive exemplary damages against Defendants (save COUNTY) in favor of Plaintiff in an amount to be shown at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS – *MONELL* LIABILITY**

**[42 U.S.C. § 1983]**

**(Against Defendant COUNTY)**

86.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

87.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant COUNTY, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of SEAN CONROY WHITING, engaged in the unconstitutional conduct and omissions as is specifically elaborated in paragraphs ¶¶ 22-65, *et seq*., above.

88.     At all times herein mentioned, COUNTY and its Sheriff's Department, Health Care Agency, and Correctional Health Services authorized and ratified the wrongful acts of the individual Defendants. The individual Defendants' wrongful conduct was the result of policies, practices and customs to subject inmates at Orange County Jails to unconstitutionally inadequate treatment for inmates with mental health conditions; permit and promote unsafe conditions for inmates leading to a heightened risk of suicide; and cover-up incidents of unconstitutional behavior by

**COMPLAINT FOR DAMAGES**

1  members of its Sheriff's Department custody staff, Heath Care Agency and

2  Correctional Health Services.

3      89.    The actions and inactions of the Orange County Sheriff's Department,

4  Health Care Agency and Correctional Health Services set forth in ¶¶ 22-65, *et seq*.

5  were known or should have been known to policy makers responsible for COUNTY,

6  and occurred with deliberate indifference to either the recurring constitutional

7  violations elaborated above, and/or to the strong likelihood that constitutional rights

8  would be violated as a result of failing to train, supervise or discipline in areas where

9  the need for such training and supervision was obvious.

10     90.    The actions of Sheriff's Department custody staff, Heath Care Agency

11 staff and Correctional Health Services staff set forth herein were a motivating force

12 behind the violations of Plaintiff's and SEAN CONROY WHITING's constitutional

13 rights as set forth in this complaint.

14     91.    As a direct and proximate result of COUNTY's acts and omissions,

15 condoning, encouraging, ratifying and deliberately ignoring the pattern and practice

16 of Defendants and DOES 1 through 50, inclusive, and omissions, Plaintiff sustained

17 injury and damages as proved at trial.

18     92.    As a result of Defendants', and each of their, violations of Plaintiff's and

19 SEAN CONROY WHITING's constitutional rights as set forth herein, Plaintiff was

20 damaged as alleged above.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

### (Against all Defendants)

24     93.    Plaintiffs reallege and incorporate herein by reference each of the

25 preceding paragraphs of this complaint, and any subsequent paragraphs.

26     94.    Defendants and DOES 1 through 50, inclusive, had a duty to provide

27 reasonable security and render access and delivery of mental and medical care,

28 treatment and/or emergency services to SEAN CONROY WHITING for his mental

health condition but breached their duty and were negligent in the performance of
their duties and this negligence caused the death of SEAN CONROY WHITING.

95.    Defendants and DOE supervisors 1 through 50, inclusive, acting within
the course and scope of their employment with Sheriff's Department custody staff,
Heath Care Agency staff and Correctional Health Services staff had a duty to assure
the competence of their employee/agents Defendants and DOES 1 through 50,
inclusive, but breached their duty and were negligent in the performance of their
duties by selecting, hiring, training, reviewing, periodically supervising, failing to
supervise, evaluating the competency and retaining their Defendant deputies,
counselors, physicians and/or employees and/or agents. This breach of the duty of
careful selection, hiring, training, review, supervision, periodic evaluation of the
competency, and retention of such officers, counselors and other staff created an
unreasonable risk of harm to person such as SEAN CONROY WHITING.

96.    The individually named Defendants breached their duty of care to
observe, report, monitor and provide reasonable security regarding SEAN CONROY
WHITING's condition and failed to prevent his suicide.

97.    As a direct and legal result of the aforesaid negligence, carelessness and
unskillfulness of Defendants, and each of them, and as a result of their breach of duty
of care to SEAN CONROY WHITING, he was injured due to a serious but treatable
mental health condition and Plaintiff has suffered damages as alleged above.

98.    As a legal result of the aforesaid negligence and unskillfulness of
Defendants, SEAN CONROY WHITING's trauma and injuries and/or suicidal
ideation condition did not receive timely, appropriate and indicated intervention and
treatment and his condition worsened and resulted in his suicide, and he suffered
serious injury and harm as a legal cause of the negligent conduct of Defendants,
thereby causing damage as alleged above.

## SIXTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA GOV'T CODE §845.6

**(Against all Defendants, except COUNTY)**

99.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

100.   By virtue of the foregoing, Defendants, including but not limited to representatives of Sheriff's Department custody staff, Heath Care Agency staff and Correctional Health Services staff knew or had reason to know that SEAN CONROY WHITING needed immediate medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition monitored. The failure to provide immediate medical care and mental health care, where his health and mental condition were deteriorating, proximately caused his suicide.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF AMERICANS WITH DISABILITY ACT (ADA), TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C. §794, AND CALIFORNIA UNRUH ACT, CAL. CIVIL CODE §§51, et seq.

**(Against all Defendants)**

101.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

102.   SEAN CONROY WHITING was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RH), 29 U.S.C. Section 794 and Cal. Civil Code Sec. 51, et seq., and qualified as an individual with a disability under California law, and he met the essential eligibility requirements of the COUNTY'S and OCSD'S programs to provide mental/medical health care services for its inmate patients in the Orange County Jails.

**COMPLAINT FOR DAMAGES**

103.    Defendant COUNTY and its jails and mental health services are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. Sec. 12131 (2), under Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code Sec.51, et seq., explicated by the regulations promulgated under each of these laws.

104.    Defendant Health Care Services and Correctional Health Services "engaged in the business of . . . health care," custody for person whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).

105.    Under the ADA, COUNTY is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal civil rights" of persons who are receiving services under its aegis are protected.

106.    Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be "serious and pervasive social problems." 42 U.S.C. Section 12101(a)(2).

107.    COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. Sec.12182(a).

108.    Defendant COUNTY receives federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, Sec. 504, which specifies that "program or activity" means all of the operations of a department, agency special purpose district or other instrumentality of a State or of a local government.

**COMPLAINT FOR DAMAGES**

109.    Defendant COUNTY and other Defendants violated the ADA and Rehabilitation Act, and Cal. Civ. Code § 51 *et seq*., and deprived SEAN CONROY WHITING and Plaintiff of their federally and state protected rights by:

(a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with the Orange County Jails;

(b) failing to provide services or accommodate SEAN CONROY WHITING with access to the programs and services of COUNTY's designated mental health facilities within Orange County Jails for person who qualify for access and services under California and federal law;

(c) failing to provide services or accommodate SEAN CONROY WHITING as indicated and with appropriate classification, housing and monitoring for a person in their sole custody and with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled;

(d) failing to provide reasonable accommodations to people in custody with mental disabilities in their jails, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities;

(e) failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat, and interact with disabled persons, such as SEAN CONROY WHITING; and

(f) failing to comply with the U.S. Department of Justice recommendations regarding care, treatment and security to person with mental disabilities, resulting in discrimination against SEAN CONROY WHITING, under the ADA and Rehabilitation Act and California Civil Code §51, *et seq*.

110.    Defendant SEAN CONROY WHITING was denied benefits of the services, programs, and activities of COUNTY which deprived him of mental health and medical health programs and services which would have provided the delivery of

treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs and to protect himself from self-harm. Defendants' failure to train their employees, and the denial of mental and medical health care, treatment, follow-up, training, supervision was a result in the violation of Plaintiff's constitutional rights.

111.   As a legal result of the acts and misconduct of the Defendants, and each of them, complained herein, SEAN CONROY WHITING died and Plaintiff has suffered, is now suffering and will continue to suffer damages as alleged herein.

## EIGHTH CAUSE OF ACTION

### Wrongful Death (Cal. Civ. Proc. Code § 377.60) Under California State Law (Against All Defendants)

112.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

113.   As shown above, Plaintiff SUSAN ANN SMITH is the natural and legal mother and heir of SEAN CONROY WHITING, and is entitled to inherit from SEAN CONROY WHITING via intestate succession under California state law.

114.   Also as shown above, Defendants failed to provide SEAN CONROY WHITING with reasonable security, in that they ignored and/or failed to reasonably monitor, to provide security, and to prevent SEAN CONROY WHITING from committing harm to himself; failed to seek immediately indicated access to mental and medical care for him; and ignored his serious but treatable mental health condition, which resulted in SEAN CONROY WHITING committing suicide.

115.   As a direct and proximate result of Defendants' actions, above-referenced, Plaintiff SUSAN ANN SMITH lost the solace, society and comfort of SEAN CONROY WHITING, and Plaintiff incurred medical and psychological costs/bills and expenses, loss of possession, use and enjoyment of, and damage to

**COMPLAINT FOR DAMAGES**

personal and real property, incurred the loss of society, comfort, solace and their parent – child relationship with SEAN CONROY WHITING; all in an amount to be proven at trial. Moreover, Defendants are liable to Plaintiff pursuant to Cal. Civ. Proc. Code § 377.60 in an amount to be proven at trial.

116.    The actions by Defendants were done maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive and/or exemplary damages against Defendants (save COUNTY) in an amount to be shown at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of Sean Conroy Whiting, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.    Sean Conroy Whiting's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.    Violation of Sean Conroy Whiting's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.    Sean Conroy Whiting's loss of life, pursuant to federal civil rights law;

F.    Sean Conroy Whiting's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.    Punitive damages as to individual peace officer defendants;

**COMPLAINT FOR DAMAGES**

1      J.     Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 &

2           private attorney general doctrine);

3      K.    Civil penalties;

4      L.    Interest; and

5      M.   All other damages, penalties, costs, interest, and attorneys' fees as

6           allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil

7           Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil

8           Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

9           and/or federal law.

11  Dated: December 20, 2023          **BD&J, PC**
Olivier A. Taillieu
Jennifer R. Bagosy

By: _____

Attorneys for Plaintiff SUSAN ANN
SMITH, as successor in interest to
DECEDENT SEAN CONROY
WHITING; and SUSAN ANN SMITH
individually

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

2         Plaintiffs, SUSAN ANN SMITH, as successor in interest to DECEDENT SEAN

3   CONROY WHITING; and SUSAN ANN SMITH individually hereby make a demand

4   for a jury trial in this action.

5

6   Dated: December 20, 2023                    **BD&J, PC**
                                                Olivier A. Taillieu
7                                               Jennifer R. Bagosy

8

9

                                          By:  _____
10                                             Attorneys for Plaintiff SUSAN ANN
                                               SMITH, as successor in interest to
11                                             DECEDENT SEAN CONROY
                                               WHITING; and SUSAN ANN SMITH
12                                             individually

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**